UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JAMES H. HIGGASON, JR., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:18-CV-771-PPS-MGG |
| | ) | |
| WARDEN, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

James H. Higgason, Jr., a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary hearing (MCF 16-12-373) where a Disciplinary Hearing Officer (DHO) found him guilty of fleeing or physically resisting staff in violation of Indiana Department of Correction (IDOC) policy B-235 on December 28, 2016. ECF 1 at 1. He was sanctioned with the loss of 60 days earned credit time and the imposition of a suspended sanction from a prior case. ECF 13-3 at 1. The Warden has filed the administrative record. ECF 13. Higgason has not filed a traverse and has asked the court to issue its ruling without a traverse. ECF 15. Thus, the case is now fully briefed.

The Fourteenth Amendment guarantees prisoners certain procedural due process rights in prison disciplinary hearings: (1) advance written notice of the charges; (2) an opportunity to be heard before an impartial decision-maker; (3) an opportunity to call witnesses and present documentary evidence in defense, when consistent with

institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there must also be "some evidence" in the record to support the guilty finding. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

In the context of a prison disciplinary hearing, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. "In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (quotation marks omitted).

> [T]he findings of a prison disciplinary board [need only] have the support of some evidence in the record. This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Although some evidence is not much, it still must point to the accused's guilt. It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) (quotation marks, citations, parenthesis, and ellipsis omitted).

In this case, Higgason was found guilty of violating IDOC policy B-235. This offense prohibits inmates from "[f]leeing or physically resisting a staff member in the

2

performance of his/her duty." Indiana Department of Correction, Adult Disciplinary Process: Appendix I. http://www.in.gov/idoc/files/02-04-101_APPENDIX_I-OFFENSES_6-1-2015(1).pdf.

The Conduct Report charged Higgason as follows:

On 12/15/16 at approximately 2:35 pm I, Officer F. Schaeffner, was working at the feeding window of Chow [H]all 3. Offender Higgason, James 856635 approached and placed his ID in the diet window and stood to the side. I recalled I had just received another clothing request from him, and informed him I had received it and would be getting him clothing as soon as I could. He replied, "When the f*** is that going to be? Why don't you do your f****** job and give me my clothes." I then told him I was very far behind and to be patient. He stated, "F*** you, you f****** b****. Just do your job and leave me alone." I told him that I was being polite and he needed to do the same. He then stated "Why don't I just kick you in the n***?"

At this point I ordered him to cuff up for threatening staff. The offender refused to comply and stated "And what if I don't?" Officer B. Meyers [sic.] approached and began to speak with him. He attempted to talk the offender into complying. After a moment offender Higgason stated "I'll spit in your face," to Ofc. Meyers [sic.]. I moved to place the offenders right arm in restraints. He pulled away from me, and Ofc. Meyers [sic.], Sergeant Collingsworth, and I placed the offender on the ground and applied mechanical restraints to his arms and legs. He refused to stand and walk so a wheelchair was brought in to remove him from the chowhall. He was taken to RHU.

ECF 13-1 at 1.

Officer B. Myers provided the following statement of the incident:

On 12/15/16 at approximately 1424 I, Officer B. Myers was escorting PHU into Chow Hall 3. Once Offender Higgason, James DOC#856635 reached the diet window, he began a conversation about his clothing order with Officer Schaeffner. Officer Schaeffner explained to Offender Higgason that he was behind around 480 offender clothing orders due to not having any clothing to pass out. Offender Higgason became aggressive due to the answer he received. Offender Higgason told Officer Schaeffner he was

3

going to kick him in the n*** if he did not get his clothes. At this point in time I came up front the rear of the chow l[i]ne to assist Officer Schaeffner. Officer Schaeffner told Offender Higgason to turn around to cuff up, Offender Higgason refused. I began talking to Offender Higgason trying to get him to cuff up. However, Offender Higgason was still refusing. Offender Higgason stated he was going to spit in my face and beat my a**. Offender Higgason stated by doing so he would get an outside case and 5 years added to his sentence. I told Offender Higgason to turn around and cuff up. Once Offender Higgason turned around, I grabbed his arm to cuff him up. Offender Higgason pulled away and threw his elbows back at Officer Schaeffner and me. Sgt. Collingsworth grabbed Offender Higgason and placed him on the ground. Once on the ground placed restraints on Offender Higgason. Leg restraints were also applied to Offender Higgason due to continual resistance. Offender Higgason was placed in a wheel chair and escorted to RHU.

ECF 13-4 at 1.

Sergeant Collingsworth provided the following statement of the incident:

On 12/15/16 at approximately 2:35 PM. I Sergeant J. Collingsworth was assigned to feed lunch meal in dining hall three. I noticed Officer F. Schaeffner and Officer B. Meyers [sic.] ordering Offender Higgason, James #856635 P-115 to comply with being placed in mechanical restraints. I approached to speak with the Offender when he pulled away from Officer Schaeffner. Officer Myers [sic.] took control of his left arm as Officer Schaeffner regained control of his right arm. Offender Higgason pulled away again by throwing his right arm backward and upward towards Officer Schaeffner['s] face. I then took a hold of Offender Higgason['s] head by [w]rapping my right arm around his head with my forearm being placed on his forehead. I then secured Offender Higgason to the floor for staff and his safety. I assisted Offender Schaeffner in securing both Offender's arms in mechanical restraints and leg restraints. Offender Higgason was then helped to a s[i]tting position on the floor. A wheelchair was use[d] to transport Offender Higgason due to him refusing to walk to RHU without any further incidents.

ECF 13-5 at 1.

In his petition, Higgason argues there are four grounds which entitle him to habeas corpus relief. In the first and third grounds of his petition, Higgason avers that

4

prison officials violated his due process rights because they failed to follow IDOC policy. ECF 1 at 2-3, 5-6. First, Higgason claims that IDOC policy was violated because the DHO in his disciplinary hearing "had not completed his Department's training for the offender disciplinary process." ECF 1 at 2. In other words, he thought the DHO did not meet the "criteria" needed to perform the duties of a hearing officer. ECF 1 at 2-3. Higgason also asserts that IDOC policy was violated because the DHO did not notify mental health staff about his conduct violation prior to his hearing. ECF 1 at 5-6. In this regard, he claims he should have only been sanctioned with a "written reprimand" because he suffers from a mental illness for which he takes medication and undergoes counseling. *Id*.

Higgason's arguments set forth in grounds one and three both go towards alleged IDOC procedural violations. However, habeas corpus relief can only be granted for "violation[s] of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Failure to follow policy is not a constitutional violation. *Estelle v. McGuire*, 502 U.S. 62, 68 n.2 (1991) ("state-law violations provide no basis for federal habeas relief") and *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison did not follow internal policies had "no bearing on his right to due process"). Therefore, Higgason's claims regarding violations of prison policies cannot be remedied in a habeas corpus petition.

In the second ground of his petition, Higgason argues that his due process rights were violated because he did not receive notice of the charge at least 24 hours before his

5

hearing. ECF 1 at 3-5. Here, he points out IDOC policy required that his hearing be scheduled no sooner than 24 hours after he received a copy of the screening and conduct reports, unless he otherwise agreed to waive the 24-hour notice requirement. ECF 1 at 3-4. Higgason was entitled to notice of the factual allegations of the charge at least 24 hours before the hearing. *Wolff*, 418 U.S. at 564. On December 28, 2016, Higgason was notified of the charge when he received both the screening and conduct reports. ECF 13-1 at 1, 13-2 at 1. In those reports, Higgason was informed of the rule B-235 violation, as well as the facts underlying the charge. *Id*. For instance, the conduct report detailed the fact that Higgason physically resisted three prison officers—Officers Schaeffner and Myers, and Sergeant Collingsworth—in the performance of their duties. Officer Myers's and Sergeant Collingsworth's statements, which were attached to the conduct report, corroborated Higgason's conduct violation. Because Higgason was properly notified of the charge and underlying facts, his due process rights were satisfied.

To the extent Higgason now claims he did not waive the 24-hour notice requirement, that contention fails. The pertinent facts are as follows. When the DHO asked Higgason if he wanted to have the disciplinary hearing early, he stated, "[Y]ou must realize that unless you render a favorable decision today, I will appeal everything that happens." ECF 1 at 3. A fair reading of this statement shows that Higgason implicitly agreed to waive the 24-hour notice requirement. While his statement appears to be predicated on the DHO rendering a favorable decision, he nonetheless agreed to

6

proceed with the hearing early—waiving the 24-hour notice requirement. While Higgason himself tries to hinge his agreement to an early hearing on a favorable outcome, there is no due process safeguard requiring a favorable decision in return for waiving the 24-hour notice requirement. Higgason further claims that IDOC policy was violated because his waiver was neither documented nor initialed on the screening report by prison officials. ECF 1 at 4. However, as discussed *supra*, violations of state law do not entitle prisoners to habeas corpus relief. *Estelle*, 502 U.S. at 67-68. Moreover, the court's review of the record shows the DHO detailed Higgason's decision to waive the 24-hour notice requirement on the report of disciplinary hearing. ECF 13-3 at 1. Therefore, this ground does not identify a basis for granting habeas corpus relief.

In the fourth ground of his petition, Higgason argues his due process rights were violated because he was not provided with "[c]op[ies] of clothing slips from September, 2016, to present." ECF 1 at 6. He states he requested the slips to show he submitted one to three clothing requests each week to Officer Schaeffner but they were "unanswered." ECF 1 at 6-7. Prison officials have discretion to "keep the hearing within reasonable limits." *Wolff*, 418 U.S. at 566. A hearing officer may deny witness or evidence requests that threaten institutional goals or are irrelevant, repetitive, or unnecessary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003). That is what happened here. The DHO denied Higgason's request for clothing slips because they were irrelevant to the charged offense. ECF 13-2 at 1. While Higgason states the "unanswered" clothing slips establish the "aggravating circumstances" or reason for his anger toward Officer Schaeffner, the

7

slips neither prove nor disprove any part of the B-235 violation as that offense prohibits an inmate from fleeing or physically resisting a staff member in the performance of that officer's duties. Because Higgason has not identified anything from the clothing slips that would prove to be exculpatory or might have aided his defense, this fourth ground does not identify a basis for granting habeas corpus relief. *Piggie,* 342 F.3d at 666.

As a final matter, to the extent Higgason seems to imply in his petition that there was insufficient evidence for the DHO to find him guilty of violating offense B-235, that contention fails. In assessing the sufficiency of the evidence, a conduct report alone can be enough to support a finding of guilt. *McPherson*, 188 F.3d at 786. Such is the case here. In the conduct report, Officer Schaeffner detailed his encounter with Higgason at the feeding window of Chow Hall 3 where Higgason, using vulgar and intimidating language, threatened to kick him. ECF 13-1 at 1. In light of Higgason's aggressive behavior, Officer Schaeffner ordered him to cuff up but he refused to do so. *Id*. Officer Myers next approached Higgason, but when he attempted to talk to Higgason, he stated he would spit in his face. *Id*. Officer Schaeffner then attempted to place Higgason's right arm in restraints but Higgason pulled away and the two officers with the assistance of Sergeant Collingsworth placed Higgason on the ground and put his arms and legs in mechanical restraints. *Id*. Because he refused to stand or walk, Higgason was taken away in a wheelchair. *Id*.

Given Officer Schaeffner's detailed conduct report documenting Higgason's attempt to physically resist three prison officers, along with Officer Myers's and

8

Sergeant Collingsworth's statements corroborating the incident, there was more than "some evidence" for the DHO to find Higgason guilty of offense B-235. While Higgason claims that prison officers "picked [him] up and slammed [him] on [his] head [and] knocked [him] out" (ECF 13-3 at 1), the DHO was not required to credit or believe his story. *McPherson*, 188 F.3d at 786 (the court is not "required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence."). Therefore, the DHO's finding that Higgason was guilty was neither arbitrary nor unreasonable in light of these facts.

If Higgason wants to appeal this order, he does not need a certificate of appealability because he is challenging a prison disciplinary proceeding. *See Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 666 (7th Cir. 2009). However, he may not proceed in forma pauperis on appeal because pursuant to 28 U.S.C. § 1915(a)(3), an appeal in this case could not be taken in good faith.

For these reasons, James H. Higgason, Jr.'s petition for writ of habeas corpus (ECF 1) is DENIED. Furthermore, Higgason's request for summary ruling (ECF 15) is GRANTED. The clerk is DIRECTED to close this case.

ENTERED: January 7, 2019.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT

9